Counsel, you may state your appearance. Good morning, Your Honor. It's David Oster on behalf of Maria Enriquez Baeza. Can you hear me? Yes, you may proceed. May it please the Court, David Oster on behalf of Maria Enriquez Baeza, petitioner. I'd like to reserve a minute for rebuttal. And with the understanding that I don't need to go into the details of all the issues that have been fully briefed, I'd like to just address one aspect of the case, and that's the nexus. Counsel, if I may, before you do that, I have a question about your brief. In your brief, you say that Senora Baeza acted as a material witness and was called to testify against a smuggling organization. But before the IJ, she testified that she was never called to testify. Which is correct? Both, actually. She was a material witness. They can't both be correct, but I'll hear you out. Well, she was a material witness in this particular case in New Mexico, in front of the District Court, but she never testified as such. So she was called as a material witness. She never was put on the stand, is my understanding. But, you say when she was called to testify, that means what? Did she appear in the court? That's a very good question. I believe she appeared in the court. She was never called to actually testify as such, that she gave testimony against the trafficking organization. But she was a material witness, and she was called by the United States Attorney, and that's in the record. Well, then why did she say, when she was before the immigration judge, that she never was called to testify? Now that's a statement under oath, and what's in the brief, of course, is not under oath. I understand that the petitioner was a material witness, deposed as such, by the United States Attorney. I understand your position. I'm trying to understand her testimony. When she said she was never called to testify, what do I do with it? Well, I think what she said was that she was never put on the actual stand to testify. That just never happened. Can I ask you a couple of questions for you? What was the nature of the permit that Ms. Baeza had when she was paroled into the U.S. to participate as a witness? The nature of the parole? The nature of the permit. She was allowed to stay in the country, correct? Correct. To act as a material witness, with the potential of testifying, apparently. And so, I'm just trying to figure out, what was the nature of it? Did she get a U-Visa or an S-Visa? Well, she did not. She was merely paroled into the United States in order to testify in this particular case in New Mexico. That was the nature of the parole. It was limited to her testimony. She did not receive a U-Visa or an S-Visa at that time. So, she was allowed in. She was here temporarily, apparently? Correct. Was that what... It would have been a parole that would have allowed her to, at some point, possibly adjust her legal status to something else. However, she departed, and that is the problem. She departed to attend her son's funeral in Mexico, and then returned without inspection. So, I'm just trying to figure out, if she had not left to go to her son's funeral, and had re... and then ended up re-entering with a... with a parole, she would have not... we would have not been in this situation. Would that... so, I guess, what was her eligibility for... or her possibility for relief, if that hadn't happened? Is she... because she was entered. She was allowed in on a parole, which is basically a fictional legal entry. And, as such, she would have been eligible for either an adjustment of status, if a U.S. citizen, for instance, would have filed an I-130 on her behalf. She would have been eligible for multiple other forms of relief, including an I-360, perhaps. But, none of that happened. And, did she ask for permission to go to her son's funeral? No, she did not. She departed the U.S. to go to the son's funeral, and then returned, but not with permission from the marshals. And, when she returned, it was without inspection? That's correct. Is that a situation in which, normally, permission would have been granted? Or, perhaps, that's a better question for the government. Had she thought to ask that he had been allowed, as a matter of course, for something like this? I do not know the answer to that question. That is probably a question for the government. And, have any facts on the ground changed since Ms. Baeza filed her opening brief in court more than four years ago? Circumstances have changed, in such that she was married to a U.S. citizen who abused her recently. And, she has filed a VAWA application, which was prima facie, she's eligible for. And, actually, the I-360 has now been approved. The problem with the I-360 is the eligibility to adjust status. Because, she departed and entered Iwi, and triggered a 2-12-A-9-C bar. It's the 10-year bar that cannot be cured. So, that is the problem with her situation. She does have this VAWA, and so, in my opinion, she cannot be returned to Mexico, per se. And, she has U.S. citizen children from this spouse that abused her. And, he's in prison at this time. So, those are the changed circumstances. But, they're not relevant to the problem at hand. Maybe they are to go to court, but I couldn't make an argument to create an eligibility or anything else with regard to her asylum application. Do you want to reserve the balance of your time? Yes, I have no argument prepared. But, I'm very pleased with the court's questions, and I will reserve my time. Alright, thank you. So, um... Ms. Camarelli is appearing by phone. Okay. Can you please state your name, counsel? Yes, good morning. May it please the court, this is Dana Camarelli for the Attorney General. Um, I just wanted to answer, I believe it was Judge O'Scallon's question concerning the material witness order, um, and just clarify the timeline of events. A petitioner entered the U.S., or was encountered entering the U.S. unlawfully July 19, 2011, and she was picked up with Brenda to be, as a material witness, to say she planned to pay Rose Potter $2,300 for getting her into the United States. And Rose Potter is the only, she's the only person that an indictment was filed against. Uh, in March 22nd of 2012, Rose Potter pled guilty to the count in the indictment, and April 12th, a petitioner was released for being a material witness. She never had to testify. Could you answer my question also? This is Judge Graber speaking. Concerning, if, um, the petitioner had requested permission to attend her son's funeral, is that something that would have been granted in the ordinary course, if she had thought to ask? Yes, I did look into that, and, um, that's what DHS informed me, is that yes, she could have obtained permission to attend the funeral. And I agree with opposing counsel that it does limit her adjustment. I didn't know about the VAWA petition, but... ...has to do with the equities and not the legal issues. Is this a case that the government would be willing to engage in mediation? It seems to me that a lot of equities are in the petitioner's favor here, and some of the lack of eligibility is, I don't want to say technical, because it's the law, but if all of this is happening because she neglected to seek permission to attend the funeral of her son who was murdered, it seems to me that there's really no other reason why something couldn't be worked out. What is the government's position about that? Your Honor, I have not been approached by opposing counsel. I'm hearing this as fresh news. It's not news, it's a question for me, not from counsel. I understand that. I'm just saying I didn't understand that there's been an I-360 approved. I didn't know there was an application. I had no idea that this other possibility had been brewing, and so we, of course, would be willing to enter mediation. Even though she entered the country with a coyote for whom to be paid, and in her brief she says that she was called to testify, and you just confirmed that no, she was never called to testify. As a matter of fact, the criminal proceeding was plead out. Would those be considerations the government would be willing to overlook? Your Honor, I mean, in terms of this petition for review, our position is that, first of all, the brief from petitioner waived a number of dispositive issues, and even if they didn't, the nexus, we don't think she has a claim for relief under asylum. The only purpose of mediation would be to possibly do judicial administrative closure, because I'm not conceding that there's anything in her claim for relief. There's no compelling evidence that this court should reverse what the agency found. I'm merely reacting to the fact that there could be this other route for her that deals with USCIS and not my agency. So, I take it you would be willing to go to mediation? Is that correct? Yes.  Yes. Thank you. I don't know if you have still five more minutes if you want to make any other arguments. I'm fine resting on our brief. I feel like we, I guess the only thing I would like to say more about the nexus and just to say very briefly if we wind up in mediation, but in case we don't, I just want to say that petitioner was never threatened. Her brothers and parents were never threatened. They remained safely in Mexico, and unfortunately, the boys that were walking with her son didn't identify the perpetrators, didn't see their faces, didn't hear them say anything, and they ran away. And so, the government's position is that her son's death was just a tragic act of violence and isn't linked to her material witness order for a single person who wound up fleeing out anyway. And she never, no one ever linked the two to her in threats or in any way that would scare her from testifying. And if there are no other questions, then I... Counselor, I have one other question. I'm kind of assuming, and you tell me if I'm wrong, that your agreement to mediate would be only by invitation of the court and not something that you would seek on your own. And based on your arguments today, this person is not really a likely candidate for the government to concede in this case. Am I right? Yes, that's correct. Alright, thank you. Thank you. So, if... Ms. Kamilari, if you have nothing further, then I'll call on Mr. Assar and see if he has anything further in his two minutes. Yes, I'm sorry, I have nothing further. Thank you very much. Thank you. Thank you, Your Honor. Briefly, we are definitely open to mediation, of course. We would definitely invite that opportunity. The big issue is with the Iwi. If that can be resolved somehow, and the government agrees to a parole into the United States, this could be resolved. But with regard to the nexus, really briefly, there were threats made to my client, and her son was murdered in broad daylight, walking down the street to his home business. He was not part of a gang. He was a young boy, 16 years old, no weapons. He was stabbed in the back and in the neck. There was no struggle. There was no fight. There was no prior altercation. So this is definitely an execution-style murder. There were no investigations made by the government, by the police. Nothing. These perpetrators are still at large. And there is a realistic probability, a very realistic probability, that this murder occurred because his mother was a material witness in a case in New Mexico. There's no real other explanation of a young boy walking down the street, being stabbed in the back by strangers, other than that the boy is being executed. And I believe there is a clear nexus to the asylum claim and the murder. Does that conclude your oral argument? That concludes my oral argument, Your Honor. I ran out of time. Thank you very much, Mr. Asser, Ms. Camilleri. I appreciate your oral argument presentations today. The case of Maria Isabel Enriquez Baeza versus Merrick Garland is submitted. The remaining cases on our docket have been submitted on the briefs. And so I believe we are adjourned. Thank you very much. Thank you. All rise.
judges: MURGUIA, O'SCANNLAIN, GRABER